723 P.2d 967

**In the Matter of Arturo J. GALLEGOS, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

**No. 16453.**

Supreme Court of New Mexico.

Aug. 21, 1986.

Virginia Ferrara, Chief Counsel, Disciplinary Bd., Albuquerque, for Board.

Arturo J. Gallegos, Albuquerque, pro se.

**OPINION**

PER CURIAM.

This matter came before this Court on July 22, 1986, after completion of disciplinary proceedings conducted pursuant to NMSA 1978, Rules Governing Discipline (Repl.Pamp.1985) wherein attorney Arturo J. Gallegos acknowledged having engaged in numerous acts of misconduct and agreed to the imposition of the sanction of disbarment. Gallegos was previously summarily suspended from the practice of law by this Court on April 10, 1985, pursuant to Rules Governing Discipline, Rule 12(a)(5)(i), pending the outcome of these proceedings. The hearing committee and the Disciplinary Board have accepted Gallegos' consent to disbarment and the Court adopts the Board's recommendation that he be disbarred and that certain costs be assessed against him.

In 1982, Gallegos suggested to client James Haymon that he could invest money for Haymon and that Haymon could realize a large profit within twelve months. Haymon delivered $6,000.00 to Gallegos for this purpose, and Gallegos subsequently told him that the money had been invested in a real estate contract assigned to Haymon. After the twelve months had elapsed, Haymon requested the return of his money. Gallegos advised that the contract (a copy of which was never seen by Haymon) had been foreclosed upon and that Haymon's money was lost. Gallegos promised to repay Haymon but never did. Records pertaining to Gallegos' bank accounts indicate that Haymon's money was never placed in trust but went directly into Gallegos' office checking account, where it was apparently utilized by Gallegos for his own purposes. There is no evidence that

the money was ever invested in a real estate contract. Such conduct is violative of NMSA 1978, Code of Prof.Resp., Rules 1–102(A)(3), 1–102(A)(4), 1–102(A)(6), 7–101(A)(3), 9–102(A), 9–102(B)(3), and 9–102(B)(4) (Repl.Pamp.1985).

■ In another case, Gallegos was employed to represent petitioner Kay D. Vadala in a divorce action. The judgment awarded his client certain property in the possession of the respondent, who appealed the decision. Gallegos did not request a supersedeas bond or take any steps to enforce the judgment during the pendency of the appeal. When the judgment was ultimately affirmed, the property had been fraudulently conveyed to others by the respondent. Gallegos' client was forced to incur additional legal fees in efforts to gain possession of what was rightfully hers. These efforts were only partially successful. Gallegos advised the judge that he really had no idea how to proceed once the case was remanded, but he did not attempt to associate with counsel competent in such matters. Additionally, he totally ignored the frantic efforts of his client to reach him in order to have the case resolved. In this instance Gallegos' inaction and incompetence were violative of NMSA 1978, Code of Prof.Resp., Rules 6–101(A)(1), 6–101(A)(2), 6–101(A)(3), 7–101(A)(1) and 7–101(A)(3) (Repl.Pamp.1985).

■ Marta Torres retained Gallegos to represent her interests in the probate of her ex-husband's estate. She and the deceased had been co-owners of a liquor license and of certain real property; she wished to purchase his one-half interest in the license from the estate and to sell to the estate her interest in the real property. The Court approved Ms. Torres' purchase of the interest in the liquor license contingent upon her applying to the Department of Alcoholic Beverage Control to have the license transferred to her name. Ms. Torres had given Gallegos $150.00 for this purpose. Gallegos did not place the money in trust but deposited it in his personal account and converted it to his own use; he never submitted the appropriate forms to the Department of Alcoholic Beverage Control.

Gallegos negotiated the sale of Ms. Torres' interest in the real property, and the buyer's attorney tendered to him a payment of $625.00 for Ms. Torres. Gallegos assured opposing counsel that the money would be held in trust pending the completion of the sale. He never advised his client of either the offer to purchase her property or of his receipt of the $625.00. When the transaction could not be consummated, opposing counsel requested a refund of the $625.00 paid by his client. Gallegos never returned this money; records pertaining to Gallegos' trust account show that the money was never deposited there.

Gallegos' dishonest and unprofessional actions in the Torres cases violate NMSA 1978, Code of Prof.Resp., Rules 1–102(A)(3), 1–102(A)(4), 1–102(A)(6), 6–101(A)(3), 7–101(A)(3), 9–102(A), 9–102(B)(3) and 9–102(B)(4) (Repl.Pamp.1985).

■ Gallegos was employed in 1982 by Heriberta Martinez to handle various probate matters; she entrusted to him the amount of $4,094.54, a small safe, and various documents. In January 1983, Ms. Martinez became dissatisfied with Gallegos' lack of action and discharged him as her attorney. In her letter of discharge to Gallegos, she requested that he send her money and other property to her new attorney. Approximately one month later, Gallegos delivered the documents and the safe to the new attorney and promised to deliver a trust account check for the $4,094.54 that afternoon. He delivered no check nor any money. The new attorney wrote and called Gallegos repeatedly for the next two months and finally threatened a lawsuit on behalf of the estate if the money were not returned. On April 29, 1983, Gallegos delivered in cash about half of the money entrusted to him but said he was holding the remainder in trust. The remaining funds, also in cash, were not delivered to the new attorney until mid-June 1983. Bank records show that the funds entrusted to Gallegos by Ms. Mar-

tinez were never placed in trust, and Gallegos acknowledges that he misappropriated them. Gallegos' conduct in this instance was violative of NMSA 1978, Code of Prof. Resp., Rules 1–102(A)(3), 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 9–102(A), 9–102(B)(3) and 9–102(B)(4) (Repl.Pamp.1985).

■ In yet another case, Gallegos was retained by Juliette Ferrales to obtain a divorce for her. On October 14, 1981, the court granted the divorce, awarded custody of a minor child to Ms. Ferrales, and ordered the respondent to pay child support. Gallegos was directed to prepare a final decree. Gallegos claims to have prepared such a document and to have sent it to the respondent for his signature, but when he did not receive the document back he took no further action to have a decree entered. The case was subsequently dismissed for failure to prosecute. In September 1983, nearly two years later, Gallegos' client contacted him to request a copy of her divorce decree. Only then did Gallegos have the case reopened and a final decree entered. Such gross neglect by an attorney violates NMSA 1978, Code of Prof.Resp., Rules 6–101(A)(3) and 7–101(A)(1) (Repl.Pamp.1985).

■ In October 1984, Luis Segovia paid Gallegos to represent him in a URESA action filed against him by the State of California. Gallegos never filed an answer to the URESA petition, and a default judgment was entered against Mr. Segovia in the amount of $23,362.50. Gallegos in this case committed violations of NMSA 1978, Code of Prof.Resp., Rules 6–101(A)(3), 7–101(A)(1), 7–101(A)(2), and 7–101(A)(3) (Repl.Pamp.1985).

■ Gallegos prepared wills for Donna and Joseph Landis in 1982, and thereafter suggested to them that if they would each pay him $1,000.00 plus tax, he would probate their estates at the time of their deaths. Gallegos was paid the money. Mr. and Mrs. Landis subsequently wanted to make certain changes in their wills, but were unable to reach Gallegos. They then became concerned as to whether he would honor his agreement to probate their wills

and wrote to the Disciplinary Board for assistance. It is clear that in this instance Gallegos simply defrauded his clients of over $2,000.00 in violation of NMSA 1978, Code of Prof.Resp., Rules 1–102(A)(3), 1–102(A)(4), 1–102(A)(6), 2–106(A) (Repl. Pamp.1985).

■ We are appalled by the extent of Gallegos' misconduct and by the magnitude of the damage he has inflicted upon members of the public. Conduct of this sort by an attorney can lead only to disbarment. While Gallegos has conveyed to this Court an expression of regret and an apology for his actions, we can only hope that he will find some way to express his remorse to those persons whose cases he mishandled and whose money he misappropriated. In that the sanction of disbarment will be imposed, we have no wish to encourage Gallegos to apply for reinstatement by suggesting to him that the payment of restitution might insure his reinstatement at some point in the future. Any person whose dishonesty reaches heights such as these should not contemplate a career as an attorney.

IT IS THEREFORE ORDERED that the suspension of ARTURO J. GALLEGOS be revoked and that he be and hereby is disbarred pursuant to Rules Governing Discipline, Rule 11(a)(1).

IT IS FURTHER ORDERED that the Clerk of the Court publish this opinion in the State Bar of New Mexico *News and Views* and in the *New Mexico Reports.*

IT IS FURTHER ORDERED that Gallegos' compliance with Rules Governing Discipline, Rule 17 will not be required at this time in view of his earlier suspension pursuant to Rules Governing Discipline, Rule 12(a)(5)(i).

IT IS FURTHER ORDERED that in accordance with Gallegos' agreement and the recommendation of the Disciplinary Board, the costs of this action in the amount of $1,762.36 are assessed against him. These costs are to be paid to the Disciplinary Board on or before March 1, 1988.

IT IS SO ORDERED.